IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PEGGY J. HARPEST,

        Plaintiff,

   vs.                           Civil Action 2:13-cv-925
                                    Judge Frost
                                    Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

### I. Background

This is an action instituted under the provisions of 42 U.S.C. §
405(g) for review of a final decision of the Commissioner of Social
Security denying plaintiff's application for a period of disability
and disability insurance benefits.  This matter is now before the
Court for consideration of *Plaintiff Peggy J. Harpest's Statement of
Specific Errors* ("*Statement of Errors*"), Doc. No. 14, the
Commissioner's *Memorandum in Opposition*, Doc. No. 20, and *Plaintiff's
Reply*, Doc. No. 21.

Plaintiff Peggy J. Harpest filed her application for benefits on
July 8, 2009, alleging that she has been disabled since April 21,
2009.  *PAGEID* 57, 180.  The application was denied initially and upon
reconsideration, and plaintiff requested a *de novo* hearing before an
administrative law judge.

An administrative hearing was held on March 2, 2012, at which
plaintiff, represented by counsel, appeared and testified, as did

James Lanier, Ph.D., who testified as a vocational expert.  *PAGEID* 75.
In a decision dated April 27, 2012, the administrative law judge
concluded that plaintiff was not disabled from April 21, 2009, through
the date of the administrative decision.  *PAGEID* 57-68.  That decision
became the final decision of the Commissioner of Social Security when
the Appeals Council declined review on July 30, 2013.  *PAGEID* 39.

Plaintiff was 46 years of age on the date of the administrative
decision.  *See PAGEID* 68, 180.  She has a limited education, is able
to communicate in English, and has past relevant work as a cashier II,
cleaner, warehouse/factory laborer, machine operator, stock clerk, job
coach, stock control clerk, and material handler.  *PAGEID* 66-67.
Plaintiff was last insured for disability insurance benefits on
September 30, 2014.  *PAGEID* 59.  She has not engaged in substantial
gainful activity since April 21, 2009, her alleged date of onset of
disability.  *Id.*

## II.  Medical Evidence

Plaintiff challenges only the administrative law judge's
evaluation of her mental impairments.  The Court therefore discusses
only that evidence relevant to the issues raised by plaintiff.

Plaintiff has treated with Sharon K. Lee, C.N.P., since at least
2000 for, *inter alia*, depression and anxiety.  *See PAGEID* 327.  CNP
Lee has prescribed medication for the conditions, although plaintiff
has demonstrated a pattern of discontinuing the medication upon
improvement.  *See, e.g., id.; PAGEID* 329-32.

2

In January 2007, plaintiff reported that she was having
difficulty caring for herself and organizing her thoughts; she was not
sleeping more than three hours per night. *PAGEID* 335.  CNP Lee
diagnosed bipolar disorder/depression and prescribed Zyprexa.  In
March 2010, plaintiff reported that she had experienced increased
depression and anxiety since October 2009. *PAGEID* 478.  CNP Lee
prescribed Cymbalta; plaintiff reported that her mood was "much
improved" on March 31, 2010, and she experienced only occasional
feelings of depression and anxiety. *PAGEID* 477.  On April 14, 2010,
plaintiff reported that she "feels great on Cymbalta," had "a better
outlook on life," and was "out and about doing things." *PAGEID* 476.

Plaintiff was consultatively psychologically evaluated, at the
request of the state agency, by Michael J. Wuebker, Ph.D., on June 10,
2010. *PAGEID* 487-92.  Dr. Wuebker assigned a global assessment of
functioning score ("GAF") of 50[1] and diagnosed major depression,
recurrent, moderate; social phobia; and personality disorder, NOS
(borderline, avoidant, and dependent traits). *PAGEID* 490-91.  Dr.
Wuebker opined that plaintiff's ability to relate to others is
unimpaired, her ability to understand, remember, and follow simple
instructions in a work environment is mildly impaired, and her ability

---

[1]
     "The GAF scale is a method of considering psychological, social,
and occupational function on a hypothetical continuum of mental
health.  The GAF scale ranges from 0 to 100, with serious
impairment in functioning at a score of 50 or below.  Scores
between 51 and 60 represent moderate symptoms or a moderate
difficulty in social, occupational, or school
functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

to maintain attention, concentration, persistence, and pace sufficient to perform simple repetitive tasks in a work environment is moderately impaired. *PAGEID* 491. Dr. Wuebker further opined that plaintiff's mental ability to withstand the stress and pressures associated with day-to-day work activity is moderately impaired. *Id*. According to Dr. Wuebker, plaintiff's mood and anxiety issues "would seemingly moderately affect these abilities. The more a job would require social contact/interaction, the greater would seemingly be her impairment." *Id*.

Caroline Lewin, Ph.D., reviewed the record and completed a psychiatric review technique form and mental residual functional capacity assessment on June 17, 2010. *PAGEID* 494-510. According to Dr. Lewin, plaintiff was moderately limited in activities of daily living and had difficulty in maintaining social functioning and in maintaining concentration, persistence, or pace. *PAGEID* 504. Plaintiff was moderately limited in seven of twenty areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 508-09. She was not significantly limited in the remaining 13 areas of functioning. *Id*. Dr. Lewin opined that plaintiff

> remains able to cope with most instructions, concentrate short term but not necessarily persist to completion on her own consistently, cooperate with others but not seek out others in a work setting, may avoid public (shops at night) but is not in conflict with others, and should be able to function mentally with simple tasks.

*PAGEID* 510.

Eli Perencevich, D.O., reviewed the record for the state agency and, on June 29, 2010, opined that Dr. Lewin's mental residual functional capacity assessment "appears reasonable." *PAGEID* 512.

CNP Lee completed a mental residual functional capacity questionnaire on June 2, 2011. *PAGEID* 616-18. CNP Lee opined that plaintiff was extremely limited in her ability to work in cooperation with or in proximity to others without being districted by them. *PAGEID* 617. Plaintiff had marked limitations in eight of the remaining 15 areas of functioning related to social interaction and adaptation, moderate limitations in four areas, and mild limitation in three areas. *PAGEID* 617-18. According to CNP Lee, plaintiff's condition would likely deteriorate if she were placed under the stress of a job. *PAGEID* 618. CNP Lee noted that plaintiff had "multiple previous jobs despite employer's attempts to accommodate [increased] stress of work environment; claimant has [increased] stress, maladaptive behavior unable to complete work; difficulty managing life and work. DX with social phobia disorder." *Id*.

Plaintiff underwent mental health treatment on two occasions in October 2011 at Consolidated Care, Inc. *PAGEID* 646-62. Plaintiff reported increased symptoms of depression and anxiety, including being withdrawn and isolated, decreased interest in activities, difficulty concentrating and completing tasks, feeling helpless and worthless, and trouble sleeping. *PAGEID* 659. Plaintiff was assigned a GAF of 47 and diagnosed with major depressive disorder - severe without psychotic features. *PAGEID* 660. A diagnosis of bipolar I disorder

was also suspected. *PAGEID* 559. Plaintiff was referred to M.G. Shiva Prasad, M.D. *PAGEID* 660.

Plaintiff underwent treatment by Dr. Prasad on December 20, 2011. *PAGEID* 640. Plaintiff reported having been tearful and emotional for three years, panic attacks, and poor sleep patterns. *Id*. Upon examination, plaintiff appeared anxious, had coherent speech, reported no delusions or hallucinations, and had no suicidal thoughts. *Id*. Dr. Prasad assigned a GAF of 51-60 and diagnosed bipolar disorder and anxious personality. *Id*. He prescribed Effexor XR and Lamictal. *Id*.

On February 3, 2012, plaintiff reported to Dr. Prasad that she felt very well, was sleeping regularly, and felt like she had "broken out of [her] box." *PAGEID* 639. Plaintiff was oriented, had immediate recall, concentration, and orientation and used normal speech. Her mood was not euthymic, anxious, angry, irritated, or depressed; her affect was appropriate. She had no preoccupation or obsession and her thought process was goal directed and coherent with no flight of ideas. *Id*.

## III. Administrative Decision

The administrative law judge found that plaintiff's severe mental impairment consisted of affective disorder. *PAGEID* 59. Her impairment neither met nor equalled a listed impairment and leaves plaintiff with the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except: claimant is limited to simple work with only superficial contact with coworkers and supervisors and no contact with the general public." *PAGEID* 60-

63.  Although this RFC precluded plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is capable of performing a significant number of jobs in the national economy, including such jobs as routine clerk, mail clerk, and small products bench assembler.  *PAGEID* 66-68. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 21, 2009, through the date of the administrative decision.  *PAGEID* 68.

## IV. Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667

7

F.2d at 536.  If the Commissioner's decision is supported by
substantial evidence, it must be affirmed even if this Court would
decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d
1058, 1059 (6th Cir. 1983), and even if substantial evidence also
supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

Plaintiff argues, first, that the administrative law judge
erred in evaluating the June 2, 2011, opinion of CNP Lee.  *Statement
of Errors*, pp. 7-13.  CNP Lee is not a "treating source" within the
meaning of the Social Security regulations, because she is not a
"physician, psychologist, or other acceptable medical source." 20
C.F.R. §§ 404.1502, 1513(a).  The opinions of nurse practitioners,
even treating nurse practitioners, are therefore not entitled to the
deference to which the opinions of treating physicians are ordinarily
entitled.  *See* 20 C.F.R. § 404.1527(d).  However, administrative law
judges are vested with the "discretion to determine the proper weight
to accord opinions from 'other sources' such as nurse practitioners."
*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)
(citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir.
1997)).  Evidence from other sources, including nurse practitioners,
may be considered "to show the severity of [the claimant's]
impairment(s) and how it affects [the claimant's] ability to work."
20 C.F.R. § 404.1513(d)(1).  Among the factors to be considered in
evaluating the opinions of these "other sources" are the length of
time and frequency of treatment, consistency with other evidence, the
degree to which the source presents relevant evidence to support the

8

opinion, how well the opinion is explained, whether the source has special expertise, and any other factor supporting or refuting the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).  An administrative law judge need not weigh all the factors in every case; the evaluation depends on the particular facts in each case.  *See id*. at *5.  However, an administrative law judge "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  *Id*. at *6.

Acknowledging that CNP Lee is an "other source," *Statement of Errors*, p. 9, plaintiff nevertheless argues that the administrative law judge erred by failing to consider CNP Lee's June 2, 2011 mental residual functional capacity evaluation.  *Id*. at 8-9.

CNP Lee completed physical and mental residual functional capacity evaluations on June 2, 2011.  *PAGEID* 613-18.  With regard to the latter, CNP Lee opined that plaintiff was extremely limited in her ability to work in cooperation with or in proximity to others without being districted by them.  *PAGEID* 617.  In the remaining 15 areas of functioning related to social interaction and adaptation, CNP Lee opined that plaintiff had marked limitations in eight areas, moderate limitations in four areas, and mild limitation in three areas.  *PAGEID* 617-18.  CNP Lee further opined that plaintiff's condition would likely deteriorate if she were placed under the stress of a job.  *PAGEID* 618.

9

Noting that plaintiff had a longstanding treating relationship with CNP Lee, the administrative law judge categorized CNP Lee's mental health treatment of plaintiff as "conservative." *PAGEID* 65. The administrative law judge also expressly considered CNP Lee's June 2011 opinion:

> [T]he undersigned has considered the opinion of the claimant's primary medical provider, Sharon K. Lee. At the hearing, the medical provider was described as a medical doctor; in fact she is a certified family nurse practitioner. Accordingly, the undersigned gives greater weight to records containing statements by treating physicians. FNP Lee assessed an extremely limited residual functional capacity that is inconsistent with her own treatment records as well as the evidence of record as a whole (Ex. 24F, pp. 2-6).

*PAGEID* 66. The administrative law judge went on to discuss specific inconsistencies between the record and CNP Lee's opinion regarding plaintiff's physical limitations. *Id*.

Although the administrative law judge cited to the exhibit that encompasses CNP Lee's entire evaluation of plaintiff, *i.e.,* both physical and mental (Exhibit 24F, pp. 2-6), it is unclear whether the administrative law judge actually considered CNP Lee's evaluation of plaintiff's mental status. The administrative law judge found generally that CNP Lee's opinion was inconsistent with her own treatment records and the evidence as a whole, but he expressly addressed only aspects of CNP Lee's evaluation of plaintiff's physical capacity. *See PAGEID* 66. Moreover, although the administrative law judge stated that he accorded greater weight to "records containing statements by treating physicians," *id.,* the record contains no

10

statement by a treating physician of plaintiff's mental limitations. As agency reviewing physicians, Dr. Levin and Dr. Perencevich were "nonexamining" sources;[2] as a one-time consultative physician, Dr. Wuebker was a "nontreating" source;[3] and Dr. Prasad, who treated plaintiff once in December 2011 and once in February 2012, did not provide a "medical opinion"[4] regarding plaintiff's functional abilities. Although an administrative law judge could properly discount CNP Lee's opinion regarding plaintiff's mental limitations in favor of "medical opinions" from "acceptable medical sources," it is unclear from the language used by the administrative law judge whether CNP Lee's mental residual functional capacity evaluation was even considered at all.

Plaintiff next argues that the hypothetical question posed by the administrative law judge to the vocational expert did not accurately portray plaintiff's moderate psychological limitations. *Statement of Errors*, pp. 13-18. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th

---

[2] A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. § 404.1502.
[3] A "[n]ontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *See* 20 C.F.R. § 404.1502.
[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Cir. 2010).  "Hypothetical questions, however, need only incorporate those limitations which the [administrative law judge] has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2010) (citing *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The administrative law judge found, at steps two and three of the sequential evaluation process, that plaintiff had moderate difficulties with regard to concentration, persistence, or pace. *PAGEID* 62.  These limitations, as noted by the administrative law judge, "are not a residual functional capacity assessment," but are nevertheless reflected in the RFC determination. *PAGEID* 62-63.  Yet the administrative law judge found that plaintiff has the RFC to "perform light work as defined in 20 CFR 404.1567(b) except: claimant is limited to simple work with only superficial contact with coworkers and supervisors and no contact with the general public," *PAGEID* 63, and asked the vocational expert to assume a claimant with plaintiff's vocational profile who is limited to light exertion and simple work "with only superficial contact with coworkers and supervisors and none with the general public." *PAGEID* 102.  Plaintiff argues that the hypothetical posed to the vocational expert is deficient because it did not include the moderate limitation in concentration, persistence, and pace found by the administrative law judge. *Statement of Errors*, p. 13. Referring to *Ealy,* 594 F.3d 504, plaintiff specifically argues that the limitations found by the administrative law judge in the RFC determination do not appropriately reflect a moderate limitation in

concentration, persistence, or pace. *Statement of Errors*, pp. 13-18.

As discussed *supra*, a vocational expert's testimony in response to a hypothetical question can serve as substantial evidence only if the question accurately portrays the claimant's physical and mental impairments. *Ealy*, 594 F.3d at 516. In *Ealy*, the administrative law judge "relied on the vocational expert's testimony in response to a hypothetical question that stated, in relevant part, 'assume this person is limited to simple, repetitive tasks and instructions in non-public work settings.'" *Id.* at 517. The administrative law judge had expressly found that the plaintiff could work for two-hour segments and that speed of performance could not be critical to his job, but had failed to include that limitation in the hypothetical posed to the vocational expert. *Id.* at 516. The Sixth Circuit remanded the case because the hypothetical failed to adequately describe the claimant's moderate difficulties with regard to concentration, persistence or pace. *See id.* (citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (finding that a hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" is not adequate to convey a moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."); *Whack v. Comm'r of Soc. Sec.*, No. 06-4917, 2008 U.S. Dist. LEXIS 14083, at *8 (E.D. Pa. Feb. 26, 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically

13

established limitations where the claimant has moderate deficiencies in concentration, persistence, or pace)).

The Commissioner in this case argues that, "since *Ealy*, this district and others have reaffirmed that a limitation to simple, repetitive tasks — particularly with additional limitations that specifically address Plaintiff's unique mental impairments — may reasonably address a claimant's moderate impairment of concentration, persistence, and pace." *Commissioner's Response*, p. 8.  The Commissioner is correct that "several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to 'simple repetitive tasks' in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace." *Horsely v. Comm'r of Soc. Sec.*, No. 1:11-CV-703, 2013 WL 55637, at *8 (S.D. Ohio Jan. 3, 2013) *report and recommendation adopted Horsley v. Comm'r of Soc. Sec.*, No. 1:11-CV-703, 2013 WL 980315 (S.D. Ohio Mar. 13, 2013)).  However, it is significant that the administrative law judge in this case did not limit plaintiff to "simple repetitive tasks;" rather, the administrative law judge limited plaintiff to only "simple" work.  *PAGEID* 63.  As the Sixth Circuit noted in *Ealy*, hypothetical restrictions to "simple" work may not sufficiently incorporate a claimant's medically established limitations where, as here, the claimant has moderate deficiencies in concentration, persistence, or pace.  *Ealy*, 594 F.3d at 516-17 (citing *Whack*, 2008 U.S. Dist. LEXIS 14083 at *8).

Here, the administrative law judge expressly found that plaintiff

is moderately impaired in the areas of concentration, persistence, or pace, yet he failed to adequately address that limitation in his RFC assessment.  This Court therefore cannot conclude that the hypothetical posed to the vocational expert fairly encompassed all of the limitations actually found by the administrative law judge.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further proceedings consistent with the foregoing.[5]

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States*

---

[5] The Court realizes that, in recommending reversal of the Commissioner's decision, the Court has focused on the language used by the administrative law judge.  The imprecise and ambiguous nature of the language used, however, precludes a finding that the administrative law judge's decision is supported by substantial evidence.

*v. Walters*, 638 F.2d 947 (6th Cir. 1981).


October 27, 2014                          _____*s/Norah McCann King*_____
                                          Norah M<sup>c</sup>Cann King
                                  United States Magistrate Judge